UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x

STENSRUD, INC. and KAYLEIGH ROSE
AMSTUTZ, a/k/a CHAPPELL ROAN,       **MEMORANDUM AND ORDER**
    25-CV-5067 (RPK) (MMH)

    Plaintiffs,

    v.

VARIOUS JOHN DOES, JANE DOES,
and ABC COMPANIES,

    Defendants.

-----------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

    Plaintiffs—the recording artist commonly known as Chappell Roan and the company licensed to sell her merchandise—have sought an emergency temporary restraining order, preliminary injunction, and *ex parte* seizure order barring defendants that are identified only as "Various John Does, Jane Does, and ABC Companies" from selling bootleg merchandise outside the concerts on Roan's current tour. *See* Pls.' Emergency *Ex Parte* Motion 1 (Dkt. #6). This Court denied the requests for emergency relief, with this opinion to follow. *See* Sept. 19, 2025 Order. As explained below, federal courts can only resolve concrete disputes between plaintiffs and particular defendants; they cannot grant decrees against offending conduct that bind the entire world. Because plaintiffs' lawsuit contravenes these principles, their emergency motion is denied.

## BACKGROUND

    Plaintiff Kayleigh Rose Amstutz uses the name Chappell Roan "to identify herself in all phases of the entertainment industry and to distinguish herself from other professional musical performers." Compl. ¶ 6 (Dkt. #1). She has granted plaintiff Stensrud, Inc., the exclusive right

1

to sell merchandise bearing the Chappell Roan "name, trademark, logo, and likeness" at her concerts. *Id.* ¶ 11. This right has proved lucrative for Stensrud: to date, it has sold over $12 million in Chappell Roan merchandise. *Id.* ¶ 9. More sales are likely because Roan is starting a new concert tour that "involves many arenas with seating in excess of 15,000 people," Stensrud Decl. ¶ 9 (Dkt. #8), and "[v]irtually all of those concerts are or will be sold out," Compl. ¶ 12. The tour schedule included performances in Forest Hills, New York, on September 20, 21, 23, and 24. *Id.* ¶ 8.

Plaintiffs allege that because many thousands of people will attend Roan's concerts, bootleggers have a strong incentive to sell counterfeit merchandise, such as counterfeit concert t-shirts, outside the tour venues. *See* Stensrud Decl. ¶¶ 11–17. Accordingly, plaintiffs allege, such vendors "will most assuredly appear before, during and after each of the upcoming concert performances on the current Chappell Roan tour." Feinswog Decl. ¶ 13 (Dkt. #6-1).

Seeking to prevent these sales of counterfeit goods, plaintiffs filed this lawsuit under the Lanham Act, which "allows the producer of a product or service to initiate a cause of action against a person who uses 'any word, term name, symbol, or device, or any combination thereof which is likely to cause confusion as to the origin, sponsorship, or approval of the producer's services.'" *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 153–54 (2d Cir. 2007) (quoting 15 U.S.C. § 1125(a)(1)(A) (alterations adopted)).

The defendants to the lawsuit are identified only as "Various John Does, Jane Does, and ABC Companies," whose "identities," the complaint states, "are not presently known." Compl. ¶¶ 4–5. The complaint instead identifies defendants by the characteristic of engaging in future trademark-infringing conduct that plaintiffs wish to enjoin. It describes them simply as "independent unlicensed peddlers and manufacturing and distributing companies who will be

attempting to distribute and sell unauthorized bootleg and inferior merchandise embodying the CHAPPELL ROAN name, trademark, logos and/or likeness" outside Roan's concerts in Forest Hills or any other "Chappell Roan concerts on her present concert tour." *Id.* ¶ 8.

Simultaneous with filing the complaint, plaintiffs moved *ex parte* for an emergency temporary restraining order ("TRO"), order of seizure, and preliminary injunction against the "Various John Does, Jane Does, and ABC Companies." *See* Proposed Order to Show Cause on Motion for Preliminary Injunction with Temporary Restraining Order and Order of Seizure ("Proposed TRO") 1 (Dkt. #6-6). Plaintiffs invoked the Lanham Act provisions authorizing courts to enjoin trademark infringement, 15 U.S.C. § 1116(a), and to issue *ex parte* orders "providing for the seizure of goods and counterfeit marks involved in such violation," *id.* § 1116(d)(1)(A).

In support of these requests for emergency relief, plaintiffs submit declarations that describe the frequency of bootlegging activity on tours by high-profile musicians, *see, e.g.*, Stensrud Decl. ¶ 11, and predict that counterfeiters will sell bootleg merchandise on Roan's tour as well, *see, e.g., id.* ¶ 32; Feinswog Decl. ¶ 13. They assert that the individuals selling counterfeit goods at concerts are "part of a nationwide network of bootleg sale companies consisting of major manufacturers located throughout the United States and dozens of sub-peddlers who follow particular musical groups from concert to concert throughout an entire concert tour," Feinswog Decl. ¶ 12, and then in turn "distribute their wares to local sellers," *id.* ¶ 13. But they maintain that the individuals who will engage in such wrongdoing are "unidentified and unidentifiable." *Id.* ¶ 3.

Plaintiffs' proposed order would provide that defendants—who are identified in the proposed order solely as "Various John Does, Jane Does, and ABC Companies, their true identities being unknown," Proposed TRO 1—as well as their "agents, servants, employees, attorneys,

3

successors, and assigns and all persons, firms and corporations acting in concert with them," *id.* at 2—are temporarily restrained from "manufacturing, distributing, selling or holding for sale" "all clothing, jewelry, photographs, posters and other merchandise . . . bearing the CHAPPELL ROAN trademark, likeness and logos," *id.* at 1, pending a hearing on a preliminary injunction against defendants, which would be held at a future date set by the Court.

Plaintiffs' order would further authorize law enforcement officers and others to seize from "Various John Does, Jane Does, and ABC Companies" any merchandise bearing Chappell Roan's trademark, likeness, and logos, and to deliver that property to plaintiffs. *Id.* at 2. Specifically, the U.S. Marshal for this district and any district in which plaintiffs seek to enforce the Court's order, as well as "state, county or local law enforcement authorities," off-duty officers, and "persons acting under their supervision" would be "authorized to seize" from the Doe and ABC defendants, "impound (and deliver to Plaintiffs or their representatives) any and all" merchandise bearing the Chappell Roan trademark, likeness, and logos, from four hours before until four hours after any concert on Roan's current tour, within a four mile radius of the relevant concert venue. *Ibid.*

The Court held a telephonic hearing on plaintiffs' emergency motion on September 18, 2025. By order of September 19, 2025, the Court denied plaintiff's request for emergency relief, with opinion to follow. On September 24, 2025, after the Court's denial of emergency relief, plaintiff filed a notice of voluntary dismissal.

This opinion explains the Court's denial of emergency relief. The Court may do so despite plaintiffs' voluntary dismissal because "where a court merely memorializes a previously rendered order within a reasonable time and without significantly altering the substance of that order, the subsequent written opinion may be considered as *nunc pro tunc* and thus within the court's power." *Krull v. Celotex Corp.*, 827 F.2d 80, 81 (7th Cir. 1987).

4

# DISCUSSION

Plaintiffs' emergency motion is denied. Article III of the Constitution, principles of equity that bind the federal courts, and the Federal Rules of Civil Procedure all limit courts to adjudicating disputes between particular plaintiffs and particular defendants. Plaintiffs' suit against unknown defendants falls outside those bounds and instead effectively seeks a judicial decree prohibiting everyone from engaging in the type of conduct to which plaintiffs object. Because plaintiffs' motion seeks a form of relief that federal courts are not empowered to grant, the motion is denied.

## I.     Federal Courts Can Enjoin Only Identified Defendants

Article III of the Constitution, equitable principles, and the Federal Rules of Civil Procedure limit federal courts to adjudicating actions brought against particular defendants, while barring them from granting universal decrees that bind the entire world.

Start with Article III, which limits federal courts to adjudicating "Cases" and "Controversies." U.S. Const. art. III, § 2 cl. 1. It is "elemental that there must be parties before there is a case or controversy," *Ellis v. Dyson*, 421 U.S. 426, 434 (1975); *see Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 384 (2d Cir. 2021) (same)—in other words, not only a plaintiff but also "an *identifiable* defendant, who can be served and offered the opportunity to appear as adversary," 13 Wright & Miller's Federal Practice and Procedure § 3530 (3d ed. 2008) (emphasis added).

The requirement of an identifiable defendant is also among the principles of equity that bind federal courts. *See Whole Woman's Health v. Jackson*, 595 U.S. 30, 44 (2021) ("The equitable powers of federal courts are limited by historical practice."); *see also Trump v. CASA, Inc.*, 606 U.S. 831, 841–43 (2025) (statutory grant of equity jurisdiction incorporates historical limits); 15 U.S.C. § 1116(a) (Lanham Act provision stating that injunctions are authorized only "according to the principles of equity"). Under traditional equitable principles, suits were to be

5

"brought by and against individual parties." *CASA*, 606 U.S. at 842. Because only actual individual parties could be sued, a federal court could "enjoin *named defendants* from taking specified unlawful actions," *Whole Woman's Health*, 595 U.S. at 44 (emphasis added), but could not "'lawfully enjoin the world at large,'" *ibid.* (quoting *Alemite Mfg. Corp. v. Staff,* 42 F.2d 832, 832 (2d Cir. 1930) (L. Hand, J.)). Applying this principle in *Whole Woman's Health*, the Supreme Court held that while it might be permissible to enjoin "named defendants" from bringing a particular type of lawsuit, it would be impermissible to enjoin "all unnamed private persons who might seek to bring" such litigation. *See ibid.*

The Federal Rules embody the same requirement. Federal Rule of Civil of Procedure 10(a) requires that "[t]he title of the complaint must name all the parties." Fed. R. Civ. P. 10(a). And the requirement in Federal Rule of Civil Procedure 8(a) that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief" is generally understood to require a plaintiff to "indicate clearly the defendants against whom relief is sought," by alleging "specific facts that would aid in identifying the defendant and thereby allow defendants to prepare a defense." *Ritchie v. N. Leasing Sys., Inc.*, 14 F. Supp. 3d 229, 237 (S.D.N.Y. 2014) (citation omitted); *see Hogan v. Fischer*, 738 F.3d 509, 519 (2d Cir. 2013) (complaint providing "substantial detail concerning the appearance of" unnamed defendants gave them sufficient notice). "Naming 'unknown employees' or 'unknown defendants' does not comply with Rule 8's fair notice requirement" when "the allegations are so vague as to make it impossible to identify them." *Leftridge v. Jud. Branch*, No. 3:22-cv-411 (JAM), 2023 WL 4304792, at *11 (D. Conn. June 30, 2023); *see Lee v. Jarecki*, No. 18-cv-9400 (CM), 2019 WL 948881, at *6 (S.D.N.Y. Feb. 14, 2019) (same).

These constraints leave only limited room for "John Doe" pleading, which is "not favored" in federal courts. *In re Murphy*, 482 F. App'x 624, 627 (2d Cir. 2012) (citation omitted). First, a plaintiff may be permitted to use a "John Doe" label when the complaint describes the defendant in a manner that identifies him, even without a name. *Dean v. Barber*, 951 F.2d 1210, 1215–16 & n.6 (11th Cir. 1992); *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). For instance, a plaintiff could sue the "Chief Deputy of the Jefferson County Jail," *Barber*, 951 F.2d at 1215, or the "Governor of Alabama," *id.* at 1215 n.6, because that description enables the defendant to be identified for service. *Cf. Andrews v. Officer from Sullivan Corr. Facility*, No. 21-cv-10518 (PMH), 2022 WL 1597695, at *2 (S.D.N.Y. May 19, 2022) (description of defendants insufficient when plaintiff did "not describe the[] defendants with enough detail to enable the Court to direct the New York State Attorney General's Office . . . to identify such individuals"); *Valentin v. Dinkins*, 121 F.3d 72, 75 (2d Cir. 1997) ("It is a general principle of tort law that a tort victim who cannot identify the tortfeasor cannot bring suit."). In addition, a plaintiff may be permitted to use a fictitious name in the case caption if it appears that the plaintiff has provided enough information such that the defendant's identity could be obtained "with limited further discovery." *Valentin*, 121 F.3d at 76; *see Davis v. Kelly*, 160 F.3d 917, 921 (2d Cir. 1998) (recognizing this exception); 5A Wright & Miller's Federal Practice & Procedure, *supra*, § 1321. In contrast, a plaintiff cannot simply use a "John Doe" label to describe any person who engages in the future in the type of action that the plaintiff wishes to prohibit, because such use would enable the plaintiff to "enjoin the world at large." *Whole Woman's Health*, 595 U.S. at 44 (citation omitted).

## II. Plaintiffs Seek an Impermissible Universal Injunction, Rather Than Relief Against Identified Defendants

a. Plaintiffs' "John Doe" suit does not appear justiciable. Plaintiffs effectively seek to enjoin the world at large, rather than pursuing relief against identified parties. They identify the

7

defendants only by describing the behavior that plaintiffs want to stop—namely, the unauthorized sale of Chappell Roan merchandise near the performer's concert venues around the time of her concerts. Such an injunction against "John Doe" defendants is no different than an injunction that forbids "'the world at large'" from selling Chappell Roan merchandise near concert venues around concert times. *Ibid.* (quoting *Alemite Mfg. Corp.*, 42 F.2d at 832). Plaintiffs' proposed emergency order thus falls on the wrong side of the line set out in *Whole Woman's Health*: rather than "enjoin[ing] named defendants from taking specified unlawful actions," it would enjoin "all unnamed private persons who might seek to" engage in the conduct that plaintiff challenges. *Ibid.*

It is thus no surprise that plaintiffs' requests do not fall within the recognized categories of permissible "John Doe" pleading. Plaintiffs' vague descriptions of the bootleggers they wish to target are a far cry from being so detailed as to make the use of a name "surplusage." *Richardson*, 598 F.3d at 738 (citation omitted). Courts in this Circuit have found descriptions to be sufficiently specific where the plaintiff provided, for example, an "officer's surname; the unit to which he was assigned; the date and location of the incident in question; and the docket number of the case." *Valentin*, 121 F.3d at 75; *see Barreto v. Cnty. of Suffolk*, 762 F. Supp. 2d 482, 487–88 (E.D.N.Y. 2010) (description sufficient when plaintiff alleged "the specific posts that the John Doe defendants were assigned to," "their presence (or lack thereof) at a specified time and place," and "the grounds for liability with regards to each of the Defendants"). But courts have found descriptions inadequate where they contained only general allegations of involvement in unlawful activity, as plaintiffs do here. *See, e.g.*, *Ritchie*, 14 F. Supp. 3d at 237 (description inadequate when complaint alleged that John Does were "either individuals or corporate entities"; "affiliated with the other Defendants"; "joint tortfeasors, conspirators, general or specific agents and/or 'alter

8

egos' of Defendants"; and "familiar with and authorized the unlawful policies and practices complained of").

Nor is this a case where plaintiffs have provided information that would allow them to determine the defendants' identity through "limited further discovery"—as in cases where a plaintiff could direct interrogatories to an employer aimed at uncovering the identity of an individual defendant based on a partial name, duty station, or other identifying details. *Valentin*, 121 F.3d at 75; *see Gillespie v. Civiletti*, 629 F.2d 637, 643 (9th Cir. 1980) (limited-discovery exception applied where it was "very likely that the answers to the interrogatories would have disclosed the identities of the 'John Doe' defendants"). Plaintiffs have not suggested any discovery requests that they would propound to learn the identities of the John Doe, Jane Doe, or ABC Corporation defendants. And their pleadings lack any identifying details that would suggest the John Does could be identified by directing inquiries to a known third party.

Put simply, plaintiffs' "sue-first-and-sort-out-the-defendant-later approach is not how litigation works in federal court." *Vielma v. Gruler*, 808 F. App'x 872, 881 (11th Cir. 2020). What plaintiffs effectively seek is an injunction against the entire world, prohibiting *everyone* from engaging in counterfeiting and trademark infringement around Chappell Roan's concert halls. An injunction that bars the entire world from engaging in a category of future conduct is contrary to Article III, traditional principles of equity, and the Federal Rules of Civil Procedure.

b. In seeking relief notwithstanding these justiciability limits, plaintiffs rely heavily on the fact that other courts have granted similar emergency relief against "John Does." That argument fails to persuade. For one thing, while many courts have granted similar "John Doe" emergency orders, a substantial number of courts have declined to do so, in opinions that conclude the plaintiffs failed to present a justiciable case. *See, e.g.*, *Live Nation Merch., Inc. v. Does*, 2015 WL

9

12672733, at *1 (C.D. Cal. May 21, 2015) ("no justiciable case and controversy" when complaint did not "allege that any particular Defendant has acted to infringe upon Plaintiff's rights"); *Rock Tours, Ltd. v. Does*, 507 F. Supp. 63, 66 (N.D. Ala. 1981) (case "not a justiciable one for purposes of ex parte injunctive relief" when plaintiff sued only "Various John Does"); *Live Nation Merch., Inc. v. Does*, 2018 WL 6326321, at *4 (S.D. Cal. Dec. 4, 2018) (case not justiciable when plaintiff failed "to identify or attempt[] to identify any bootleggers on this concert tour that have engaged in selling counterfeit merchandise"); *Bravado Int'l Grp. Merch. Servs., Inc. v. Does 1-100*, 2019 WL 3425990, at *3 (E.D. Cal. July 30, 2019) (no "actual case or controversy to be adjudicated" when plaintiff failed to identify "even one actual defendant who has violated plaintiff's rights"); *Plant v. Doe*, 19 F. Supp. 2d 1316, 1320–21 (S.D. Fla. 1998) (plaintiff's claims failed "for lack of justiciability" when unnamed defendants had "not committed any injurious act" and "may never have committed any similar injurious acts in the past"); *Hybe Co. v. Does 1-100*, 598 F. Supp. 3d 1005, 1008 (D. Nev. 2022) ("[B]ecause the complaint and plaintiffs' motions fail to allege that any particular defendant has taken actions to infringe on their rights, plaintiffs cannot yet show that there is any actual case or controversy to be adjudicated.").

For another thing, the decisions on which plaintiff relies have limited persuasive power, because they do little to engage with the authorities that establish limits on the powers of the federal courts. Virtually all of the orders that plaintiffs invoke appear to have been drafted by the plaintiffs and presented to district courts for signature on an emergency basis, without adversarial presentation—much like the order that plaintiffs have presented for signature here. *See* Ex. A to Pls' Emergency Motion for a TRO (Dkt. #6-2) (attaching past orders); Feinswog Decl. ¶¶ 14–15 (same). These orders contain no reasoning that addresses jurisdiction or justiciability; they are the

type of "drive-by" rulings on those matters that are typically "discount[ed]." *See Jusino v. Fed'n of Cath. Tchrs., Inc.*, 54 F.4th 95, 102 (2d Cir. 2022) (citation omitted).

The meatiest supporting authority plaintiffs identify is a *per curiam* decision from the Fifth Circuit allowing a similar seizure, *World Wresting Entertainment Inc. ("WWE") v. Unidentified Parties*, 770 F.3d 1143 (5th Cir. 2014). But that decision, too, does not engage with authorities that govern justiciability. The Fifth Circuit explained that a proposed *ex parte* seizure order targeting "unidentified parties" satisfied a statutory requirement that any seizure order "identify the persons against whom orders would issue" because supporting filings made clear that all individuals selling merchandise bearing WWE marks outside a specified venue were not authorized to do so. *Id.* at 1145. The court reasoned that "observation of unauthorized sales themselves is sufficient to identify a counterfeiter." *Ibid.* While that analysis appears to track plaintiffs' basic argument that bootleggers can be identified *post hoc*, the case does not engage persuasively—or at all—with the precedents setting forth justiciability limits under Article III, traditional principles of equity, and the Federal Rules, or with the cases setting out limits on "John Doe" pleading.

Ultimately, plaintiffs' proffered cases provide no persuasive reason why this Court may grant the type of relief that they seek. The federal courts have limited powers, and plaintiffs' request falls outside them.

c. Beyond pointing to these cases, plaintiffs principally argue that "John Doe" emergency relief should be authorized because they have no adequate alternative remedy. Without a broad injunction and seizure order against unidentified defendants, plaintiffs argue, they will suffer irreparable injury at the hands of bootleggers who "will not identify themselves, will not cease and desist from their unlawful activities unless compelled by this Court to do so and will disappear

11

into the night after the concerts absconding with their wrongful profits." *See* Feinswog Decl. ¶ 13. That argument also fails.

This Court lacks the authority to issue decrees that lie beyond the judicial power simply because it finds that such a remedy would aid plaintiffs in the enforcement of their legal rights. Congress may certainly innovate—as it has in the past—to allow more robust enforcement of trademark rights. But federal courts cannot award equitable remedies unauthorized by federal law in the name of efficiency.

In any event, plaintiffs overstate their helplessness. While seizure orders and injunctions operating against the entire world might be a cost-effective way of enforcing intellectual property rights, these are not the only methods available to plaintiffs. For starters, the Lanham Act provides backward-looking civil remedies that entitle injured parties to "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). If the infringer's acts were intentional, damages are ordinarily tripled. *Id.* § 1117(b).

To be sure, these remedies require plaintiffs to identify bootleggers. But parties proceeding under the Lanham Act routinely do just that. *See, e.g.*, *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt., Inc.*, 409 F. App'x 389, 390 (2d Cir. 2010) (plaintiff hired a private investigator to buy counterfeit products); *Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp. 3d 137, 151 (E.D.N.Y. 2016) (plaintiff visited retailers "throughout the United States" to "inspect and quarantine counterfeit" products before bringing suit); *Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 682–83 (D.N.J. 2015) (plaintiff "hired a private investigator" who "researched Defendant and his website," "contacted him by telephone," and bought counterfeit products); *cf. Bravado Int'l Grp. Merch. Servs., Inc. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 191–92 (E.D.N.Y. 2009) (plaintiffs entitled to statutory damages "in connection with the sale of items

12

bearing the registered trademarks GUNS N' ROSES, DEPECHE MODE, and IRON MAIDEN" when plaintiffs "made a purchase of three shirts" from named defendant).

Here, plaintiffs' own filings anticipate a defined class of repeat offenders—a "nationwide network of . . . companies consisting of major manufacturers located throughout the United States and dozens of sub-peddlers who follow particular musical groups from concert to concert throughout an entire concert tour," Feinswog Decl. ¶ 12—so it is hard to see how similar investigation would be doomed to failure.

Further, while plaintiffs seek an order authorizing law enforcement agents and their affiliates to conduct *ex parte* seizures of counterfeit goods, law enforcement agents can enforce the trademark laws without such a seizure order, because it is a federal crime—punishable by up to ten years in prison—to intentionally "traffic[] in goods or services and knowingly use[] a counterfeit mark on or in connection with such goods or services."  18 U.S.C. §§ 2320(a)(1), (b)(1)(A).  Plaintiffs may be seeking a convenient and cost-effective remedy, but the boundary-pushing remedy they seek is hardly their only option.

*       *       *

Plaintiffs' emergency motion seeks relief that this Court is not empowered to grant.  Accordingly, the motion is denied.

## CONCLUSION

For the foregoing reasons, plaintiffs' emergency motion is denied.

SO ORDERED.

                                       /s/ Rachel Kovner
                                       RACHEL P. KOVNER
                                       United States District Judge

Dated: September 26, 2025
       Brooklyn, New York